## Case No. 1,411a.

### In re BINFORD.

[3 Hughes, 304.][1]

Circuit Court, E. D. Virginia. 1879.[2]

CONDITIONAL SALE — RIGHTS OF SELLER — BONA FIDE PURCHASERS—BURDEN OF PROOF—LACHES.

[1. An express agreement between a seller and a buyer that a sale should be conditional

¹ [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]
² [Reversing Case No. 1,411.]

must be proved by the seller, in order to claim title to the property sold, as against creditors or subsequent bona fide purchasers of the buyer.]

[2. A seller who silently allowed the property sold to be subjected to a deed of trust, to be conveyed by the buyer, and finally to be sold for the benefit of creditors of the subsequent buyer, is estopped by his laches to claim title to the property on the ground that the sale was conditional.]

[Appeal from the district court of the United States for the eastern district of Virginia.

[In bankruptcy. John J. Binford excepted to the report of the register of the liens and their priorities binding on the estate of Charles T. Binford, a bankrupt. Exceptions sustained. Case No. 1,411. Reversed on appeal.]

BOND, Circuit Judge. This is a dispute between John J. Binford, of Richmond, and Dohan, Carroll & Co., of New York, as to which of the parties has the prior right to have its claim against John H. Greanor paid in full out of the proceeds of the sale of certain property of the bankrupt. Dohan, Carroll & Co. claim under a deed of trust made by Greanor for their benefit, dated 11th February, 1876; and J. J. Binford under a lien for unpaid purchase-money, or on the ground that the sale of March, 1873, by J. J. Binford to Greanor was a conditional sale.

The facts of the case, briefly stated, seem to me to be as follows: On the 11th of March, 1873, J. J. Binford bought at auction certain tobacco-manufacturing fixtures, paying for them the sum of five thousand two hundred and thirty-nine dollars and sixty-four cents, partly in cash and partly by a note for one thousand three hundred and sixty dollars, given him by Greanor for the purpose. Immediately afterward possession of these fixtures was given to Greanor by J. J. Binford, no bill of sale or other written document passing between them; but it is alleged by Binford, it being agreed that the transaction should be a conditional sale, and that title to the fixtures should not pass to Greanor until all the purchase-money should be paid. The books of the parties show that from time to time Greanor did pay large sums of money to Binford in settlement of this account, amounting altogether to about four-fifths of the debt, with interest. On the 11th of February, 1876, Greanor, being in need of a further advance of money, to carry on the business of manufacturing tobacco, upon which he had entered with the fixtures obtained from Binford, applied to Dohan, Carroll & Co., his correspondents in New York. To secure this new loan and his previous indebtedness, Greanor gave a deed of trust to Dohan, Carroll & Co. of his property in these fixtures, under which deed they now claim. Some time after this Greanor transferred all his property in said fixtures to Charles Binford, by an instrument which recited the deed of trust given to Dohan, Car-

roll & Co., and certain other debts, and which expressly made the transfer subject to said debts. Shortly after C. Binford became bankrupt and the property was sold.

Such being the facts, briefly stated, let us examine the grounds on which each party claims the precedence. First, as to the "lien for unpaid purchase-money"[3] claimed by Binford. Possession is indispensable to the existence of a lien, and an abandonment of the custody of the property over which the right extends divests the lien. In such a case the vendor is deemed to surrender the security he has upon the goods, and to trust to the personal responsibility of the vendee. 3 Pars. Cont. 243, 244, cases there cited. There is no better settled rule of law than this, and the reason of it is most obvious. For were it not so there would be no safety in any purchase of personal property. It would require as long and as anxious, as well as a far more difficult search into the title of the vendor of a horse, as is required into the title to a house. For the purchaser would have to assure himself that each owner had paid in full the purchase-money to the previous owner ever since the animal was foaled in order to avoid some one taking possession under a "lien for unpaid purchase-money."

It is alleged, however, that the transaction by which the fixtures passed to Greanor from J. J. Binford, was a conditional sale, and that the title to them was not to pass to Greanor until all the purchase-money was paid. It is perfectly competent for two parties to make such an agreement, and between the vendor and vendee it is unquestionably good, the vendee taking no title until the whole of the purchase-money is paid. How it affects the rights of bona fide subvendees, for a valuable consideration and without notice, or of attachment creditors, is another and more difficult question, upon which the authorities are divided. It seems, however, to be settled that there must be an express agreement to that effect, and that the burden of proof is upon the vendor who claims against creditors of the vendee; moreover, it being in the nature of a secret agreement, it is not looked upon with favor and must be strictly proved. Leighton v. Stevens, 19 Me. 154; Haggarty v. Palmer, 6 Johns. Ch. 437; Keeler v. Field, 1 Paige, 315; Smith v. Lynes, 1 Seld. [5 N. Y.] 41. Moreover the vendor must be guilty of no laches in permitting the subsale, for if he be he is estopped to deny the title of his vendee. Benj. Sales, 580, 581; cases cited.

Now applying these rules, it seems to me that there is no sufficient proof of an express agreement made at the time of the sale, nor do the subsequent acts of the parties tend to show that there was any such express agreement between them. And, moreover, if there

[3] No claim of lien was asserted in the district court, and in the language quoted, if quoted correctly, the word "lien" must have been inadvertently used; the question was simply one of title, not of lien.

were such proof the vendor (Binford) has been guilty of such laches as to estop him from claiming the benefit of it. For if there was such an agreement as claimed, yet the vendor silently allowed the vendee, first, to make a deed of trust of the property, then to convey it, and finally allowed it to be sold for the benefit of the creditors of the subvendee. Can he now come forward and say that in point of fact the title had always remained in himself? To quote the words of Tindal, C. J., in a similar case: "He, the vendor, is estopped by his own admissions, for unless this amount to an estoppel the word may as well be blotted from the law."

Binford then can claim no priority over other unsecured creditors, and the report of Register Atkins should, I think, have been confirmed, and an order will be passed accordingly reversing that of the district court.